IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| 1062 PONTIAC ROAD, INC. and | : | CIVIL ACTION |
| 1062 TRINITY PARTNERS LLC, | : | |
| T/A MAGGIE O'NEILL'S | : | |
| | : | |
| v. | : | |
| | : | |
| AXIS SURPLUS INSURANCE CO. | : | NO. 12-3043 |

ORDER AND OPINION

JACOB P. HART                                                                  DATE: February 4, 2013
UNITED STATES MAGISTRATE JUDGE

      Plaintiffs 1062 Pontiac Road, Inc., and 1062 Trinity Partners LLC, t/a Maggie O'Neill's filed this action to recover from Axis Surplus Insurance Co, ("Axis") their insurer, expenses incurred in connection with an incident in which raw sewage was discharged into the insured property via the bathroom fixtures. Now before the undersigned are the parties' cross-motions for summary judgment with respect to the expense of replacing the broken sewage line which caused the discharge of sewage. For the reasons set forth below, I find in favor of Axis, deciding that the losses in question are not covered by the Axis policy.

I.      Factual and Procedural Background

      This case was originally assigned to the Honorable Stewart Dalzell. He referred it to the undersigned for a settlement conference, which was held on September 24, 2012. At that time, the parties were able to resolve Plaintiffs' claims for the contents of the insured property and for their business income loss. They also agreed to submit Plaintiffs' structure claim to binding appraisal pursuant to § C.1 of the Business Income Coverage Form of the Axis Policy. They were not, however, able to resolve a claim for many of the expenses initially identified by

Plaintiffs as "Emergency Services." Plaintiffs' Statement of Claim, attached to Axis's Motion for Summary Judgment as Exhibit A. Accordingly, it was agreed that the parties would submit to the undersigned cross-motions for summary judgment on that issue.

Specifically, the expenses for which Axis denies coverage are those for identifying, digging up, and replacing the fractured pipe, for removing and replacing excavated soil, and for the installation of a temporary sidewalk. Axis's Exhibit A, supra. Relevantly, the Axis policy includes the following language:

> A. **Coverage**
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cost of Loss.
>
> 1. **Covered Property**
>
> Covered Property, as used in this Coverage Part, means the type of property described this Section A.1, and limited to A.2., Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.
>
> . . .
>
> 2. **Property Not Covered**
>
> Covered Property does <u>not</u> include:
>
> . . .
>
> d. Bridges, roadways, walks, patios, or other paved surfaces;
>
> . . .
>
> f. The cost of excavations, grading, backfilling, or filling;
>
> g. Foundations of building, structures, machinery or boilers if their foundations are below
>
> > (1) The lowest basement floor; or
> >
> > (2) The surface of the ground, if there is no basement;

> h. Land (including land on which the property is located), water, growing crops or lawns;
>
> . . .
>
> m. Underground pipes, flues or drains [.]

Policy, attached to Plaintiffs' Motion for Summary Judgment as Exhibits C and D.

According to Axis, this policy language precludes coverage of the disputed expenses. Plaintiffs, however, point out that, in an endorsement, the policy states:

> 3. **Duties In The Event Of Loss Or Damage**
>
> a. You must see that the following are done in the event of loss or damage to Covered Property:
>
> . . .
>
> (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.

Policy Endorsement CP 00 10 04 02, attached to Plaintiff's Motion as Exhibit D, at E(3)(a)(4). According the Plaintiffs, the new sewage pipe was necessary to protect the covered property from the further damage which would have ensued had they continued taking in sewage from the broken line.

Plaintiffs also point to coverage in the policy for "Extra Expenses." In Policy Endorsement 00 30 40 02, it is stated:

> 2. **Extra Expenses**
>
> . . .
>
> b. Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a Covered Cause of Loss.
>
> We will pay Extra Expense (other than the expense to repair or replace property) to :

3

> (1) Avoid or minimize the "suspension " of business and to continue operations at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement location or temporary location.
>
> (2) Minimize the "suspension" of business if you cannot continue "operations."
>
> We will also pay Extra Expense to repair or replace property, but only to the extent it reduces the amount of loss that otherwise would have been payable under this Coverage Form.

Plaintiff's Exhibit D.

Plaintiffs maintain that replacement of the sewage pipe was an Extra Expense they incurred to allow it to continue its business operations, asking rhetorically, and with a great deal of justification, "who wants to go to a restaurant which has raw sewage being discharged into the dining room?"

II.     Legal Standards

A.     Summary Judgment

Summary judgment is warranted where the pleadings and discovery show that there is no genuine issue as to any material fact and that the moving party entitled to judgment as a matter of law.  Fed. R. Civ. Pr. 56.  When ruling on a summary judgment motion, the court must construe the evidence and any reasonable inferences drawn from it in favor of the non-moving party.  Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986); Tiggs Corp. v. Dow Corning Corp., 822 F.2d 358, 361 (3d Cir. 1987).  Nevertheless, Rule 56 "mandates the entry of summary judgment … against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

B.  The Interpretation of an Insurance Contract

It is the function of the court to interpret a Pennsylvania insurance contract under Pennsylvania law. American Auto Ins. Co. v. Murray, 658 F.3d 311, 321 (3d Cir. 2011). The court's primary consideration in this regard is to ascertain the intent of the parties as manifested by the language of the written instrument. Id. The court determines as a matter of law whether there is an ambiguity in the insurance policy language. 12th St. Gym v. General Star Indemnity Co., 93 F.3d 1158, 1165 (3d Cir. 1996). Where the language of an insurance policy is clear and unambiguous, a court must enforce that language. Murray, supra, at 321. If possible, a policy should be interpreted as to avoid ambiguities. Id. However, if the contract's terms are reasonably susceptible to more than one interpretation, they must be regarded as ambiguous, and construed in favor of the insured. Id.

III.  Discussion

A.  The Policy is Not Ambiguous

I do not view the insurance policy at issue here as ambiguous. Most importantly, it is explicitly stated that "Covered Property" does not include underground pipes. If that were not enough, coverage for the cost of excavations or filling is also specifically excluded. Finally, the policy does not cover paved surfaces, which would describe the sidewalk, which was presumably destroyed, thus requiring the construction of a temporary sidewalk. There seems no reason to conclude that the broad and non-specific endorsements to which the Plaintiffs point actually create coverage which is specifically precluded elsewhere. As a general rule of contract interpretation, specific language controls general provisions. Capitol Bus Co. v. Blue Bird Coach Lines, Inc., 478 F.2d 556 (3d Cir. 1973); 4 Williston on Contracts § 32.10.

Plaintiffs maintain that there is Pennsylvania authority establishing that, where two clauses of an insurance contract contradict one another "the clause extending coverage should be preferred over the clause absolutely denying it." They cite <u>Occidental Fire & Casualty Co. v. Brocious</u>, 772 F.2d 47, 53 (3d Cir. 1985), which in turn cites <u>Transport Indemnity Co. v. Home Indemnity Co.</u>, 535 F.2d 232, 238 (3d Cir. 1976). However, in both <u>Brocious</u> and <u>Transport v. Home</u>, the quoted language was part of the interpretation of a "truckmen's endorsement," in which existed a "direct contradiction." <u>Brocious</u>, supra; <u>Transport v. Home</u>, <u>supra</u>. In one subpart, the truckmen's endorsements appeared to preclude coverage where a motor vehicle was leased to a trucker, but in another subsection, they provided that in those circumstances, the policy provided only excess coverage. In both cases, the courts determined that the policies afforded excess coverage.

The holdings in those cases – that a truckmen's endorsement creates excess, rather than primary liability – are irrelevant here. What is more, both <u>Brocious</u> and <u>Transport v. Home</u> involved ambiguities caused by directly contradictory language. Neither involved a situation, such as this, where coverage was arguably provided by general language, but was specifically precluded elsewhere. They certainly do not create a general rule that *any* interpretation of any policy which would provide coverage is favored over an interpretation precluding it. If this was the rule, a specific exclusion of coverage would seldom have any value.

B.   <u>Arguments Not Relying On Ambiguity</u>

Plaintiffs argue that, even if the policy language is unambiguous, coverage exists. They argue that the cost of replacing the pipe may not be available as damage to "Covered Property", but that the "Extra Expense" clause creates another source of coverage. This argument, however, has been rejected by several courts. In <u>Demers Brothers Trucking, Inc. v. Certain</u>

6

Underwriters at Lloyds, 600 F.Supp.2d 265 (D. Mass. 2009), the District Court for the District of Massachusetts wrote that allocating precluded reconstruction expenses to an Extra Expense provision would "provide an end-run around the Real and Personal Property sublimit." Id. at 278; citing Nassau Gallery, Inc. v. Nationwide Mut. Fire Ins. Co., Civ. A. No. 00C-05-034, 2003 WL 21223843 at *3 (Del. Super. Ct. Apr. 17, 2003), in which the Delaware Superior Court stated: "Additional Coverage protects an insured from specific losses, it is not a means to circumvent otherwise valid policy limitations." See also Thompson v. Threshermen's Mutual Ins. Co., 493 N.W.2d 734 (Wisc. App. 1992).

All three of the cases cited above concern expenses incurred for reconstruction, or construction of a new structure. However, the same logic – preventing an "end-run" around the policy limitations -- applies to preclude coverage for the "underground pipe" at issue here.

As for the clause requiring mitigation of damages, Plaintiffs have not made the court aware of any authority suggesting that costs specifically precluded elsewhere are recoverable in this manner. Axis, on the other hand, cites Southern Cal. Edison Co. v. Harbor Insurance Co., 83 Cal. App. 3d 747, 148 Cal. Rptr. 106 (1978). In that case, the California Court of Appeal for the Second District, Division 5, ruled that an insured's duty to mitigate loss did not require reimbursement for the repair of design defects, when the insurance policy provided that design defects were not covered. 38 Cal. App. 3d at 759-60. This was the case, even though the insured's action did, as a factual matter, mitigate loss to the covered superstructure. Id.

This would suggest that coverage for the replacement of a sewage line is not recoverable, because it is specifically precluded by the policy, even though, in a purely pragmatic sense, it certainly mitigated Plaintiffs' business losses (Axis points out that the property would have been protected simply by shutting down the defective pipe, even if no new pipe was ever installed –

7

however, a restaurant cannot operate with no working bathrooms, even if the discharge of raw sewage has ceased).

Clearly, Southern Cal. v. Harbor is only one case, and is not binding on this court. Nevertheless, to recover under an insurance policy, it is the Plaintiffs' burden to show coverage. Buckley v. Exodus Transit and Storage Corp., 744 A.2d 298, 309 (Pa. Super. 1999); Couch on Insurance Third Edition, § 254:11 (Westlaw COUCH 254:11) Database updated December 2012. They have not sustained their burden of showing that the clause requiring them to mitigate damages provides a source of coverage for the replacement of the sewage pipe. Accordingly, I find in favor of Axis, and will grant its motion for summary judgment, while denying that filed by Plaintiffs.

BY THE COURT

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE